**COMP**
MALIK W. AHMAD, Esq.
Nevada Bar No. 10305
8072 West Sahara Ave., Suite A
Las Vegas, Nevada, 89117
(702) 270-9100 (Phone)
(702) 233-9103 (Fax)
Malik@lasvegaslawgroup.com

Attorney for Plaintiff
Charles Marshall

## UNITED STATES DISTRICT COURT
## LAS VEGAS, NEVADA

| | |
|---|---|
| CHARLES MARSHALL<br>AN INDIVIDUAL<br><br>PLAINTIFF<br><br><br>SILVER STATE DISPOSAL SERVICE, INC.<br>A NEVADA CORPORATION DBA<br>REPUBLIC SERVICES OF SOUTHERN<br>NEVADA<br><br>DEFENDANT | **CASE NO: 2:15-cv-00953**<br><br>**COMPLAINT FOR VIOLATION OF ADEA ACT OF 1967;**<br><br>**COMPLAINT FOR DAMAGES FOR DENIAL OF CIVIL RIGHTS OF A DISABLED PERSON IN VIOLATION OF ADA 28 USC §1331 OF THE AMERICAN WITH DISABILITIES ACT OF 1990, (42) USC §12101, et seq.**<br><br>**REQUEST FOR JURY TRIAL** |

### NATURE AND STATEMENT OF THE CASE

This is an action under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Section 621 et seq. ("ADEA"), to correct unlawful employment practices on the basis of age and to provide appropriate relief to Charles Marshall ("Plaintiff"). As alleged with greater particularity, Republic Services ("Republic" or "Defendant"), discriminated against Plaintiff Charles Marshall because of his age, ultimately terminating him with discriminatory impact in violation of ADEA Act of 1967 and then failing to rehire him after this termination. Since at least 2012, the Defendant has engaged in unlawful employment practices at its Las Vegas facility, in violation of

THE LAW OFFICE OF MALIK W. AHMAD
8072 W. Sahara Ave., Ste. A | Las Vegas, NV 89117
Tel: 702.270.9100 | Fax: 702.233.9103
E-Mail: Malik@lasvegaslawgroup.com

Section 4(a)(1) of the ADEA, 29 U.S.C. § 623(a)(1), by failing to rehire from termination because of his age, when he is over 40 years of age. The ADEA prohibits an employer from discriminating against an employee with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age," 29 U.S .C. § 623(a); Title VII prohibits discrimination in employment on the basis of an employee's race, 42 U.S.C. § 2000e–2(a);

2. This is also an action under the American Disabilities Act and this Court has jurisdiction of this action pursuant to 28 USC §1331 of the Americans with Disabilities Act of 1990, (42 USC §12101, et seq.). Employer Republic knowingly violated American Disabilities Act.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the ADEA, 29 U.S.C. § 626(b), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada, venue is proper in this Court.

4. All conditions precedent to the institution of this lawsuit has been fulfilled including filing with EEOC. The ADEA requires only a 60-day waiting period before a plaintiff may pull his or her claims and file a lawsuit under the ADEA. 29 U.S.C. § 626(d)(1).

5. It is further alleged on information and belief that the unnamed Defendants in the complaint are alter egos, joint employers, and or integrated enterprises of Defendant Republic Services, Inc.

**PARTIES**

6. At all relevant times, Defendant (or "Republic") has continuously been corporation doing business in the State of Nevada and has continuously employed at least 20 employees.

7. Plaintiff Charles Marshall reserves the right to amend the complaint to name the DOE defendants individually or corporately, as they become known.

8. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h).

9. Plaintiff is an individual residing in Clark County, District of Las Vegas Nevada.

10. At all times relevant hereto, Defendant acted by and through its agents and servants and employees who were acting within the scope of their employment for the benefit of their employer.

11. Prior to institution of this lawsuit, the Plaintiff's counsel attempted to eliminate the Defendant's unlawful employment practices by filing a claim under EEOC which Republic refused to participate, for an amicable settlement and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b). Republic Services ("Republic") is a labor organization within the meaning of the ADEA 29 U.S.C. § 630 (d).

12. Plaintiff has therefore exhausted all administrative remedies available to him.

**INDIVIDUAL FACTUAL ALLEGATIONS**

13. Plaintiff Charles Marshall is an African–American born in 1959. As such, he is over fifty-six years of age.

14. Plaintiff has limited education and barely can read and understand English in many literate ways and intellectually a very simple person.

15. Plaintiff was hired by Republic in 1993, as a garbage helper where he worked as such until his termination in September 2, 2014.

16. Plaintiff was never promoted for a single time throughout his service of 21 years with Defendant and as such only had one job title throughout 21 years.

17. Plaintiff at all times relevant to this Complaint was, a "physically handicapped person" "physically disabled person" and a "person with a disability" as these terms are used under federal laws including, but not limited to, Title III of the Americans with Disabilities Act of 1990. Plaintiff is a "person with a disability," as defined by all applicable Nevada and the United States' laws.

18. Plaintiff has little or no previous disciplinary history action and as such has an unblemished employment record.

19. Plaintiff was again recognized and honored by his employer Republic on July 10, 1993, "as your supervisor, I would just like to take the time to thank you. Silver State Disposal Services, Inc. and myself commend you on your excellent work. You are a credit to this company."

20. In March 21, 1994, he was honored by his employer Republic when they gave him recognition for "doing a wonderful job that you are doing. You are a fine example to your fellow employees and a credit to this company,"

21. In December 2, 2008, Plaintiff was honored for "providing exceptional customer service" by Republic and for his "part in presenting a positive company image to our customers".

22. In December 11, 2009, Plaintiff was honored again for "providing exceptional customer service" by Republic and for his "part in presenting a positive company image to our customers".

23. In November 18, 2010, Plaintiff was again recognized and honored by Republic when they sent him letter, "we have received another compliment regarding your excellent customer service…On behalf of Republic Services and your fellow employees, I would like to thank you for your effort in providing exceptional customer services. Keep up the good work. *sd*. Jim Ranking, General Manager.

24. In February 2, 2011, Plaintiff was honored for "providing exceptional customer service" by Republic and for his "part in presenting a positive company image to our customers".

25. On January 1/16/2013, Republic gave Customer Service Excellence Award to Plaintiff for "doing above & beyond to service our customers and for providing an excellent customer experience".

26. In January 16, 2013, Plaintiff was honored again for "providing exceptional customer service" by Republic and for "providing an excellent customer experience".

27. On June 6, 2013, Plaintiff received another letter from employer Republic,:

"we have received another compliment regarding your excellent customer service. One of our customers took the time to contact us to compliment the crew for explaining why her trash was later than usual and she wanted to thank you for being so helpful. On behalf of Republic Services and your fellow employees, I would like to thank you for your effort in providing an excellent customer experience. Keep us the good work."

28. In October 17, 2013, Plaintiff was honored one more time for "providing exceptional customer service" by Republic and for "providing an excellent customer experience."

29. Dave Lucas who was Plaintiff's supervisor called him "too slow" in doing his work in 2014 and which "younger people can do lot faster" commenting his old age.

30. Dave Lucas told Plaintiff (including his driver) few other times that "your team is too slow in doing your work including dumping, removal, route managing" again referring to his age.

31. Plaintiff's response was that he was working as hard and as fast as possible.

32. Such comments made him emotionally distressed and soon after this, his route was changed.

33. Supervisor Dave, who also operated a Republic vehicle which usually had supply of cold water and Gatorade meant to be freely distributed to working employees like Plaintiff in hot and harsh summer. On one occasion, when Plaintiff liked to have Gatorade, Dave responded, "This is only for younger people who work faster".

34. Plaintiff is over the age of 40 years, and qualified to perform the job which he regularly did for 21-22 years and he is subjected to an adverse employment action by termination and it is his reasonable belief that he was replaced with a person outside the protected age group and as such he has a *prima facie* belief of age discrimination. Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

35. Plaintiffs suffer from disability because of shoulder and knee surgery occurred due to continuous lifting, bending, moving, and jerking his vertebral column, along with bad knees in performing his job of high mobility and lifting of weights. Plaintiff' also had other ailments including diabetes and high blood pressure.

36. On August 26, 2014, when Plaintiff was all set to go to work for his regular assignment, he was pulled and asked to report for drug and alcohol testing and providing a urine sample in the Republic facilities.

37. Plaintiff cooperated fully by making many attempts for this urine sample.

38. Plaintiff sat for almost three hours in this facility fully cooperating with the Republic in this test and screening.

39. Plaintiff was not able to produce a urine sample for drug testing due to his extreme nervousness owing to his diabetic, high blood pressure and sleeplessness, which the Defendant treated as failure to cooperate.

40. Plaintiff's failure' was not tantamount to his alleged refusal as he fully cooperated during the time he waited for the urine test sample at Defendant's premises.

41. Plaintiff waited three or more hours in this cooperation yet was unable to produce any urine sample.

42. His inability to produce urine sample was not amounting to his failure or lack of cooperation.

43. That a facially neutral policy or practice of drug test has an adverse "disparate impact" on the protected group of disabled and employees over 40 years of age.

44. Plaintiff suffers from various ailments including high blood pressure, sleeplessness, diabetes, and after affects from shoulder, wrist surgeries and continuous problems with his ankles.

45. Plaintiff had bad backbone frame and continuously suffers the aftereffects of lifting heavy trash cans, heavy objects, by bending, loading, unloading, twisting, carrying weight on his backbone, shoulders, ankles, hand and wrists, in performing his job for very long time.

46. These continuous body functions, pulls, motions and jerks continued with the same job for 21-22 years.

47. Plaintiff never seen a single promotion throughout his tenure with Republic.

48. Plaintiff was never educated for any sort of accommodation to alleviate his sufferings due to his disability conditions occurred during his employment.

49. Despite his low education, Plaintiff always liked to be promoted or transfer to get job where he does not have to wok twisting his body all the time and thus alleviate his pain causing conditions.

50. Plaintiff has no drug issue or history of any kind and never tested positive for any such drug test in any previous similar test, random or otherwise.

51. Later, Plaintiff was escorted to another outside location (Concords, Inc.) for drug testing in Republic's provided transportation where he at all times was not allowed to leave the Republic's escort.

52. A Drug Test Result on 08/26/2014 and MRO Review Date of 09/2/2014 written by Richard Wallace, M.D. Medical Review Officer and sent to Jim Ranking 315 West Cheyenne Avenue, North Las Vegas, NV 89030, showed a negative result of any drug found in his body.

53. However, this negative drug test was cancelled by same doctor from Concorde Inc. apparently for incomprehensible reasons and owing to some pressure from Republic.

54. On September 2, 2014, Sharon Clink, Manager HR of Republic terminated Plaintiff for "Refusal to Submit" a sample drug test:

> …"fails to provide an adequate specimen without a medical basis, or who tests positive to any drug test required under this Plan not excluding and other definition of refusal as defined in 49 CFR Parts 40 and 383.107 will be terminated."

> "Mr. Marshall's employment is being terminated effective September 2, 2014. Mr. Marshall was selected for mandated random drug and alcohol testing and failed to provide an adequate specimen without a medical basis. Under the Republic Services of Southern Nevada Negotiated Drug Policy Section Ix Part E, this constitutes "Refusal to Submit." Any employee who:

> "…failes to provide an adequate specimen without a medical basis, or who tests positive to any drug test required under this Plan no excluding and other definition of refusal as defined in 49 CFR Parts 40 and 382.107 will be terminated.": *sd*/Sharon Klinck HR Manager

55. Despite a negative drug test, Plaintiff was terminated from his job of 21-22 years for failure to cooperate.

56. As such, these sets of regulations or their application on Plaintiff should be highly unfair and unreasonable under the circumstances.

57. The law mandates "actual knowledge for the purpose of subpart B of this Part, means actual knowledge by an employer that a driver has used alcohol or controlled substances based on the employer's direct observation of the employee, information provided by the driver's previous employer(s), a traffic citation for driving a CMV while under the influence of

alcohol or controlled substances or an employee's admission of alcohol or controlled substance use. This section clearly does not apply on Plaintiff Charles, as his Employer Republic does not have "an actual knowledge of his drug or alcohol use".

58. This aforementioned regulation (cited in his termination letter) only applies to DOT employees and lays down the procedure how to conduct these tests and what procedure to use. Here, Charles is not a DOT employee.

59. Plaintiff's drug tests are also unconstitutional because they are personal privacy invasion and an unreasonable search and seizure, contrary to his rights granted by the Fourth Fourteenth Amendment to the U.S. Constitution.

60. Further, the initial random test was an "impermissible medical examination."

61. The ADA forbids "selection criteria that screen out or tend to screen out an individual [or class of individuals] with a disability."

62. This examination did not screen out persons with disabilities, since the test clearly filtered out those persons who had chemicals in their body which may be designed to treat physical and mental disabilities.

63. The screenings were broader and more intrusive than necessary because Republic automatically excludes all employees that take certain medications from working in any capacity at their plant.

64. Plaintiff had no drug usage of any kind throughout his employment. He was drug tested prior to his employment on 07/1/1993 at the Industrial Medical Group, North Las Vegas facility, and came out negative.

65. Furthermore, Plaintiff always believed in good faith that his termination occurred due to his age and due to his increasing disability issues.

66. Plaintiff never came across any notice providing information on the applicability of the ADEA on him or due to his limited understanding and reading capabilities could not understand its application on him.

## CAUSES OF ACTION
## COUNT I
### Age Discrimination Age Discrimination in Employment Act (ADEA)

67. The Plaintiff incorporates herein the matters pleaded at ¶¶ 1 through 66 above as though more fully set forth at length herein.

68. Plaintiff has exhausted his administrative remedies under the ADEA.

69. The effect of the practices complained of in the above paragraphs has been to deprive equal employment opportunities to persons who were age forty (40), or above at the time. The unlawful employment practices complained of above were willful within the meaning of section 7(b) of the ADEA, 29 U.S.C. § 626(b).

70. Plaintiff suffered discrimination as he can assert such claim by proving (1) the employee is in the protected age group (over 40 years of age), (2) the individual is qualified to perform the job, (3) the individual is subject to an adverse employment action such as refusal to hire, compulsory retirement, discharge or demotion, (4) the individual was replaced with a person outside the protected age group. These are the elements of a "prima facie" ADEA case. Benson v. Tocco, Inc., 113 F.3d 1203, 1207-08 (11th Cir. 1997).

71. The aforementioned reasons are necessary reasons to establish a prima facie ADEA case.

72. The reasons mentioned in the urine analysis are merely a pretext for discrimination.

73. Employer's facially neutral policy or practice has an adverse "disparate impact" on the protected group.

74. The disparate impact method of proof is clearly applicable in cases arising under Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e, et seq, which bars discrimination on the basis of race, sex, religion and national origin. *Griggs v. Duke Power Co.,* 401 U.S.424 (1971)

75. The Eighth and Ninth Circuits taken a view based on disparate impact. Smith v. Des Moines, (99 F.3d 1466)(8th Cir. 1996), *Lewis v. Aerospace Community Credit Union*, 114 F.3d 745 (8th Cir. 1997) and *EEOC v. Local* 350, 998 F.2d 641, 648 N.2 (9th Cir. 1993). The Eleventh Circuit id as yet undecided on this issue. See *Turlington v. Atlanta Gas Company*, 135 F..3d1428, 1436-37 N. 17 (11th Cir. 1999)

## COUNT II
### Violation of the Duty of Fair Representation
### National Labor Relations Act 81

76. The Plaintiff incorporates herein the matters pleaded at ¶¶ 1 through 76 above as though more fully set forth at length herein.

77. Plaintiff has exhausted his internal union remedies.

78. Defendant has violated its Duty of Fair Representation because it failed to refer Plaintiff to work when he otherwise should have been referred but was not referred for arbitrary personal reasons.

79. WHEREFORE, Defendant violated its Duty of Fair Representation in violation of the National Labor Relations Act.

## COUNT III
### Violation of the Republic Handbook
### AGREEMENT BETWEEN TEAMSTERS UNION AND LOCAL 631

80. Plaintiff incorporates herein the matters pleaded at ¶¶ 1 through 79 above as though more fully set forth at length herein.

81. By virtue of the Republic's 'Agreement Between Teamsters Union and Local 631' ("Handbook"), Plaintiff is entitled to be governed by said policy, rules and regulations in the "Agreement Between Teamsters Union Local 631.

82. Page 1 of the Handbook states and binds both Plaintiff and his former employer Republic as follows:

> "**This agreement is made and entered into this Ist day of June 2012, by and between Republic Silver State Disposal Services, Inc. a Nevada Corporation dba REPUBLIC SERVICES OF SOUTHERN NEVADA and Republic Dumpco, Inc., aka DUMPCO, a Nevada a Corporation, (the "Employee") and the INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 631, (the "Union")**

83. Article 9 describes the Progressive Discipline of the Employer and under these regulations, Employee Charles Marshall is entitled to: (i) First Written Warning (ii) Second Written Warning and (iii) Letter of Commitment.

84. In addition, the Handbook describes the Termination Letter in Article 9 subsection 4. as follows:

> **"Termination Letter: will be used for termination. At this point the employee has no option. This termination letter will be used when the employee has been through the above process, or has violated a rule or exhibited behavior which justifies immediate termination.**
> **A. Used when all other options have exhausted.**
> **B. Employee has committed a very serious violation. The employee has no other option to be terminated.**
> **C. When an employee has failed to live up to his/her Letter of Commitment.**

85. That Republic polices caused disparate impact.

## COUNT IV
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
## (42 SC § 12101, et sec.)

86. Plaintiff incorporates herein the matters pleaded at ¶¶ 1 through 85 above as though more fully set forth at length herein.

87. Pursuant to law, in 1990 the US Congress made findings per 42 USC §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that], such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."

88. Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 USC §12102):

> **It is the purpose of this act; (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.**

89. Pursuant to 42 USC §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns leases (or leases to), or operates a place of public accommodation."

90. Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 USC §12102):

91. Among the general prohibitions against discrimination which were included in 42 USC §12182(b)(1)(A)(i):

> **Denial of participation. It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation of an entity.**

92. Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 USC §12102):

> **Association -- It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association.**

93. The acts of Defendants' set forth herein were a violation of Plaintiff's rights under the ADA, Public Law 101-336, and the regulations promulgated under 28 CFR Part 36, et seq.

94. The disabled employee has the right to a reasonable accommodation but must first inform the employer of the disability. Republic as an employer independently knows the employee needs an accommodation, as this was obvious from his reported backbone injuries, and surgeries. *Brown v. Lucky Stores*, 246 F.3d 1182 (9th Cir. 2001).

95. Among the general prohibitions against discrimination were included in 42 USC §12182(b)(2)(A)(i) and 42 USC §12182(b)(2)(A)(ii):

> **Discrimination.** For purposes of subsection (a), discrimination includes –
>
> (**i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;**
>
> **(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations**

> **to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations**.

96. The specific prohibition against retaliation and coercion is included in the Americans With Disabilities Act of 1990 §503(b) and the Remedies and Procedures in §503(c):

> **(b) Interference, Coercion, or Intimidation.** - It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or his having exercised or enjoyed, or on account of his or his having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.
>
> **(c) Remedies and Procedure. –** The remedies and procedures available under sections 101, 203, and 308 of this Act shall be available to aggrieved persons for violation of subsections (a) and (b), with respect to Title I, Title II and Title III, respectively.

97. Pursuant to the Americans with Disabilities Act of 1990, §308 (42 USC §12188 et seq.), Plaintiff is entitled to the remedies and procedures set forth in the Civil Rights Act of 1964 §204(a), (42 USC §2000a-3(a)), as Plaintiff was subjected to discrimination on the basis of disability in violation of the Americans With Disabilities Act of 1990 §302.

98. Defendants, and each of their acts and omissions of failing to provide accommodation or any such information was tantamount to interference, coercion or intimidation in violation of the Americans With Disabilities Act of 1990 §503(b) (now 42 USC §12203):

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or his having encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this Act.

99. Per the Americans With Disabilities Act of 1990 §308(a)(1) (now 42 USC §12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions."

100. Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 USC §2000a-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order and attorneys' fees. Such attorneys' fees, "including litigation expenses and costs," are further specifically provided for by §505 of Title III.

**COUNT V**
**Violation of 49 CRF Parts 40 and 382.107**

§ 40.1 Who does this regulation cover?

(a) This part tells all parties who conduct drug and alcohol tests required by Department of Transportation (DOT) agency regulations how to conduct these tests and what procedures to use.

(b) This part concerns the activities of transportation employers, safety-sensitive transportation employees (including self-employed individuals, contractors and volunteers as covered by DOT agency regulations), and service agents**.**

§ 40.23 What actions do employers take after receiving verified test results?
a) As an employer who receives a verified positive drug test result, you must immediately remove the employee involved from performing safety-sensitive functions. You must take this action upon receiving the initial report of the verified positive test result. Do not wait to receive the written report or the result of a split specimen test.
(b) As an employer who receives a verified adulterated or substituted drug test result, you must consider this a refusal to test and immediately remove the employee involved from performing safety-sensitive functions. You must take this action on receiving the initial report of the verified adulterated or substituted test result. Do not wait to receive the written report or the result of a split specimen test.

**§ 38§ 382.107: Definitions.**

"Words or phrases used in this part are defined in §§ 386.2 and 390.5 of this subchapter, and § 40.3 of this title, except as provided in this section—
Actual knowledge for the purpose of subpart B of this part, means actual knowledge by an employer that a driver has used alcohol or controlled substances based on the employer's direct observation of the employee, information provided by the driver's previous employer(s), a traffic citation for driving a CMV while under the influence of alcohol or controlled substances or an employee's admission of alcohol or controlled substance use, except as provided in § 382.121. Direct observation as used in this definition means observation of alcohol or controlled substances use and does not include observation of employee behavior or physical characteristics sufficient to warrant reasonable suspicion testing under § 382.307. Alcohol means the intoxicating agent in beverage alcohol, ethyl

alcohol, or other low molecular weight alcohols including methyl and isopropyl alcohol. Alcohol concentration (or content) means the alcohol in a volume of breath expressed in terms of grams of alcohol per 210 liters of breath as indicated by an evidential breath test under this part. Alcohol use means the drinking or swallowing of any beverage, liquid mixture or preparation (including any medication), containing alcohol."

**Citation: [66 FR 43103, Aug. 17, 2001, as amended at 68 FR 75458, Dec. 31, 2003; 77 FR 59825, Oct. 1, 2012]**

2.107: Definitions.
Section 7. SHY BLADDER PROCEDURES
The term "Shy bladder" refers to a situation when the employee does not provide a sufficient amount of of urine (45 ml) for a DOT required drug test. If an employee tells the collector, upon arrive at the collection site, that he or she cannot provide a specimen, the collector must still being the collection procedure regardless of the reason given. The collector should tell the employee that most individual can provide 45 mL of urine, even when they think they cannot urinate, and direct the employee to make the attempt to provide the specimen.

101. Plaintiff incorporates herein the matters pleaded at ¶¶ 1 through 100 above as though more fully set forth at length herein.

102. Here, this procedure is only for DOT required drug test, which Plaintiff came out as negative.

103. However, if DOT procedure is followed still this should not be applicable upon Plaintiff because of his full cooperation in this drug testing.

104. The aforementioned policy is violated because no 'verified positive drug test' was received by the employer Republic for Plaintiff from drug testing agency.

105. Defendant had no actual knowledge for the purpose of subpart B of this part, means actual knowledge by an employer that a driver has used alcohol or controlled substances based on the employer's direct observation of the employee, information provided by the driver's previous employer(s).

106. Defendant never received a verified adulterated or substituted drug test result, yet still considers Plaintiff conduct as refusal to test and immediately terminated Plaintiff contrary to the aforementioned regulations.

107. The specialized information "Information and Instructions to Physician Performing A Shy bladder Medical Evaluation", which was not properly followed. This includes all the detailed instruction to the performing physician asking from a donor about a urine specimen where donor is unable to provide a sufficient amount of urine to complete the test. Here, the instructions states that:

**"when this situation arises the DOT requires that an evaluation must be performed by a physician with expertise in the medical issues raised by the donor. If the donor raises medical issues with which you have medical expertise, please do not render an opinion but rather contact the Employer or Concorde so that a referral can be made to another physician."**

## REQUESTED RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant pursuant to the Age Discrimination in Employment Act, and the National Labor Relations Act, and for violation of the American Disabilities As, as follows:

a. Award Plaintiff monetary damages for lost pay and loss of benefits including but not limited to contributions to his pension, and interest;

b. Award Plaintiff compensatory damages in an amount to be proven at trial;

c. Award Plaintiff a reasonable attorney fee and costs to be paid by the Defendant;

d. Grant such other equitable and legal relief as may be just and proper.

                                                     **/s/ MALIK W. AHMAD**
8072 West Sahara Ave., Suite A
Las Vegas, Nevada, 89117
(702) 270-9100 (Phone)
(702) 233-9103 (Fax)
Malik@lasvegaslawgroup.com
Attorney for Plaintiff
Charles Marshall